19 F.3d 33
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Emily Moody BOYD, Administratrix of the Estate of Clyde Alva
Boyd, III; Emily Moody Boyd, individually,
Plaintiffs-Appellants,
v.
UNITED STATES of America ex rel. the United States Army,
Corps of Engineers, Defendant-Appellee.
 No. 93-7038.
 United States Court of Appeals, Tenth Circuit.
 Feb. 24, 1994.
 
 ORDER AND JUDGMENT[1]
 Before BALDOCK, BARRETT, and McKAY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 This case returns to us following a remand from an appeal in which we held that plaintiff Emily Boyd's claims against the United States Army Corps of Engineers (Corps) were not completely barred by the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. 2680(a). See Boyd v. United States ex rel. United States Army, Corps of Eng'rs, 881 F.2d 895 (10th Cir.1989)(Boyd I ). By stipulation of the parties pursuant to 28 U.S.C. 636(c)(1), the magistrate judge conducted a trial concerning plaintiff's claim that the Corps' negligence caused the death of her husband, Clyde Alva Boyd, while he was snorkeling in a lake under the Corps' jurisdiction and control. The magistrate judge determined that the Corps was not negligent and awarded judgment in the Corps' favor. Plaintiff appeals, primarily on the basis that the judge's factual findings are clearly erroneous. We have jurisdiction under 28 U.S.C. 1291.
 
 
 3
 The general facts are undisputed. On Labor Day weekend in September 1982, Clyde Boyd, along with his brother, went to Tenkiller State Park in Oklahoma to go diving and snorkeling. Neither he nor his brother had ever been to the park before. After renting diving equipment at a local dive shop, they went to an area of Tenkiller Lake known as Crappie Point, which was recommended as a good diving spot. In the mid-afternoon, Clyde was snorkeling and floating face down in the lake about twenty to thirty feet offshore when he was struck by a motorized pontoon boat and killed.
 
 
 4
 The State of Oklahoma operates Tenkiller State Park under a lease from the United States, but the lake remains under the jurisdiction and control of the United States through the Corps. The lake in general and the Crappie Point area in particular are open for public use and allow mixed uses, including swimming, diving, snorkeling, and boating. There were no signs or other markers at Crappie Point warning swimmers or boaters of potential hazards, nor were there any barriers or other attempts to separate boaters and swimmers.
 
 
 5
 As administratrix of her husband's estate and on her own behalf, plaintiff filed suit against the United States alleging that the Corps had negligently failed to warn swimmers that boats were permitted in the Crappie Point area, or alternatively, that the Corps was negligent in not zoning the area to restrict the entry of boats.[2] The district court initially found that the discretionary function exception to the Federal Tort Claims Act barred plaintiff's claims and dismissed the case.
 
 
 6
 On appeal, we agreed that the "decision to zone lakes, including which parts to zone and which parts to leave unrestricted, constitutes an exercise of discretion involving competing economic and social considerations" and that the Corps' decision not to zone Crappie Point for swimming only was thus protected by the Act's discretionary function exception. Boyd I, 881 F.2d at 897. However, we concluded that "[a]n alleged failure to warn swimmers of dangerous conditions in a popular swimming area does not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned." Id. at 898. We therefore "decline[d] to extend the veil of discretion so that it covers the failure to warn swimmers at Crappie Point of potential hazards, or the failure to prohibit swimming in that area altogether." Id. In doing so, we stated that "we are not holding that a decision not to zone carries with it a duty to warn. Whether that duty exists is a question of state negligence law." Id. n. 3. We therefore remanded the case for consideration of plaintiff's failure to warn claim under Oklahoma law.[3]
 
 
 7
 The magistrate judge conducted a two-day trial to the court and concluded that the Corps was not negligent with respect to Clyde Boyd's death. Though the court's reasoning in its conclusions of law and findings of fact is not entirely clear, it appears that the court determined the Corps not to be negligent on several theories. First, the parties stipulated that Clyde Boyd was an invitee upon the Corps' property. The court stated that under Oklahoma law, a landowner does not have a duty to warn an invitee of open and obvious dangers, citing Stonesifer v. Courtney's Furniture Co., 474 F.2d 113 (10th Cir.1973). The court found that "[t]he presence of boats on Labor Day weekend, and specifically, the pontoon boat which struck and killed the decedent in the Crappie Point area where the decedent was snorkeling was an open and obvious danger." Magistrate judge's conclusions of law and findings of fact, findings of fact 1/212 (attached to appellant's opening brief). The court therefore found the Corps not negligent under a premises liability theory.
 
 
 8
 Second, the court found that the decedent "assumed all risks incident to the use of the property when he undertook to snorkel in an unrestricted area of the lake." Id., findings of fact 1/214. The court determined that the doctrine of assumption of the risk thus barred plaintiff's recovery, citing Anderson v. Northwestern Electric Co-op., 760 P.2d 188 (Okla.1988). Third, "[t]he cause of the Plaintiff's decedent's death was the negligence of the driver of the pontoon boat and the negligence of the deceased himself," with the boat driver seventy-five percent negligent and the decedent twenty-five percent negligent. Magistrate judge's findings of fact 1/215.
 
 
 9
 Plaintiff raises several issues on appeal. Her primary argument is that there is no evidence in the record to support the district court's finding that the pontoon boat was an open and obvious danger. That finding, she argues, is therefore clearly erroneous.[4] Citing only premises liability cases concerning a landowner's duty, she further contends that the Corps had a duty to warn invitees of the use of the Crappie Point area by boats and was negligent for failing to do so.[5]
 
 
 10
 Three elements are necessary for actionable negligence: "(1) The existence of a duty on part of the defendant to protect plaintiff from injury; (2) the failure of the defendant to perform his duty; and (3) the injury to plaintiff resulting from such failure." Nicholson v. Tacker, 512 P.2d 156, 158 (Okla.1973). For actionable negligence based on premises liability, the landowner's duty to invitees is to keep the premises in a reasonably safe condition and to warn invitees of hidden dangers which are known or reasonably should be known to the landowner and which are unknown, under an objective standard, to the invitees. Id.; see also McKinney v. Harrington, 855 P.2d 602, 604 (Okla.1993). A landowner owes no legal duty to warn an invitee of open and obvious dangers. Nicholson, 512 P.2d at 158.
 
 
 11
 There is no fixed rule for determining whether something is a hidden danger. "What constitutes a hidden danger depends on the physical condition of the premises and on the peculiar use made thereof by the invitor at the time of invitee's injury." Jack Healey Linen Serv. Co. v. Travis, 434 P.2d 924, 927 (Okla.1967). "A hidden danger within this rule of liability need not be totally or partially obscured from vision or withdrawn from sight; most generally, the phrase is used to denote a condition presenting a deceptively innocent appearance of safety 'which cloaks a reality of danger.' " Henryetta Constr. Co. v. Harris, 408 P.2d 522, 531 (Okla.1965). Because whether a danger is hidden or open and obvious is a question of fact, see Jack Healey, 434 P.2d at 928, we review the district court's finding that the pontoon boat was an open and obvious danger under the clearly erroneous standard. O'Connor v. R.F. Lafferty & Co., 965 F.2d 893, 901 (10th Cir.1992).
 
 
 12
 It was undisputed that virtually the entire lake--and specifically the Crappie Point area--was zoned for mixed uses, thus allowing swimmers to swim and boaters to boat in the same areas. A sign that Clyde Boyd passed on his way to Crappie Point indicated that mixed uses were allowed on the lake. The Crappie Point area contained no barriers, markers or any other means designed to keep boats out of that area. The accident occurred on Labor Day weekend, and many boats were on the lake, though there was no evidence that any boat had been in the Crappie Point area prior to the pontoon boat. All of this evidence was before the district court when it found that the pontoon boat was an open and obvious danger.
 
 
 13
 Challenging this finding, plaintiff contends that the evidence clearly showed boat use of the Crappie Point area to be a hidden danger. Crappie Point was a popular swimming and diving area, and was recommended to Clyde Boyd as a good place to dive. He had never been there before. There were no signs at Crappie Point warning him that boats used the area, there were numerous other people diving and swimming in the area, and no other boats had been in that area earlier that day. He was only twenty to thirty feet offshore, floating face down, when the boat hit him. The boat was moving fast, especially considering how close to shore it was.
 
 
 14
 Plaintiff is essentially arguing that swimmers' and divers' common use of a designated mixed-use area somehow makes use of that area by boaters a hidden danger to the swimmers and divers. Plaintiff cites no law supporting this theory. Moreover, in conflict with her hidden danger theory, plaintiff throughout her brief points out that boats frequently entered the Crappie Point area to get close to shore to view "female sunbathers." Thus, while there is no evidence that boats had been in the area earlier on the day Clyde Boyd was killed, it is clear that boats did frequently use that area.
 
 
 15
 We cannot say that the district court's finding that boat use was not a hidden danger is clearly erroneous. Therefore, the Corps had no duty to warn Clyde Boyd of boat use in the Crappie Point area. Without showing that the Corps owed a duty to warn, plaintiff cannot show that the Corps was negligent. In light of this conclusion, we need not address plaintiff's other arguments.[6]
 
 
 16
 The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 She apparently settled a separate claim against the boat driver, who was not an employee or agent of the Corps. The boat driver was neither a party nor witness in this suit
 
 
 [3]
 We also remanded for consideration of whether an Oklahoma recreational use statute immunized the Corps from suit. Boyd I, 881 F.2d at 898-99. On remand, the district court certified this issue to the Oklahoma Supreme Court, which concluded that the statute did not immunize the Corps from liability. Boyd v. United States ex rel. United States Army Corps of Eng'rs, 830 P.2d 577 (Okla.1992)
 
 
 [4]
 Related to this issue, she contends that the conclusions of law and findings of fact are insufficient because they do not contain enough subsidiary facts to allow this court to properly assess the district court's determination of the ultimate facts. See Roberts v. Metropolitan Life Ins. Co., 808 F.2d 1387, 1390 (10th Cir.1987). We do not find the district court's findings of fact so deficient that we cannot resolve this appeal
 
 
 [5]
 At one point in her opening brief, plaintiff contends that the Corps' duty to warn could also be founded on its "undertaking to promulgate rules and make inspections and warn the public against water safety hazards." Appellant's Opening Br. at 15. However, she does not cite any law nor make any further argument supporting this alleged source of the duty to warn. As a result, we will not address the merits of this claim. See Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1554 n. 6 (10th Cir.1992)
 
 
 [6]
 Plaintiff's other claimed errors pertained to the district court's conclusions regarding the decedent's assumption of the risk and the effect of the boat driver's negligence. Because the Corps owed no duty to the decedent, these claimed errors are irrelevant