**Leta M. TISSUE and Al E. Tissue, Appellants,**

**v.**

**Ettire VOLTA and Georgia Volta, Appellees.**

**No. 13798.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 18, 1957.

Decided Dec. 12, 1957.

Petition for Rehearing In Banc Denied Feb. 5, 1958.

Mr. Wesley E. McDonald, Washington, D. C., with whom Mr. B. Austin Newton, Jr., Washington, D. C., was on the brief, for appellants.

Mr. Cornelius H. Doherty, Washington, D. C., for appellees.

Before PRETTYMAN, WASHINGTON and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellants, Mr. and Mrs. Tissue, filed in the District Court a complaint for damages for personal injuries suffered by Mrs. Tissue in a fall. The defendants were Mr. and Mrs. Volta, our appellees, who were owners and landlords.

of the premises in question. At the conclusion of the presentation of the case for the plaintiffs, the District Court directed a verdict for the defendants.

The Tissues lived in an apartment house owned by the Voltas. Mr. Tissue is a painter by trade. He was engaged by Mr. Volta to paint, after regular working hours, an apartment in the same building and next door to the one occupied by him and his wife. There was no indoor passageway between the two apartments. After dark Mrs. Tissue started to go next door by way of a common back yard to summon her husband to dinner. En route across the yard in the darkness she noticed a faint glow of light inside the apartment next door and saw a figure which she thought might be her husband's. She walked toward the window to get his attention and fell into a cellar well.

These cases must be decided upon their own particular facts. Each of the two parts of this apartment building had its own front and rear entrances. The back yard to the two parts was a single, undivided area. Under each of the two parts of the building was a room, in which was the heating apparatus and the hot water heater for the apartments in that part. In each of these rooms there was also a spigot, and the tenants from time to time would attach hoses to these spigots for the purpose of washing cars out in the yard. Leading down from the yard to these basement rooms were two cellar wells with steps. These wells were about two feet, seven inches wide, running along the wall of the building. At the rear entrance of each part of the building was a porch, with steps down to the yard.

The Tissues lived in the downstairs rear apartment of one part of the building. On the evening in question Mr. Tissue, as we have said, was painting in the downstairs rear apartment of the other part of the building. Mrs. Tissue came out of the rear door to her apartment, went down the steps, and started across the yard, intending to go up the other rear steps and into the other rear door to the apartment where Mr. Tissue was at work. It was, as she described it, "just as dark as it could be." If she had walked across the yard as she had intended to do, she would not have fallen into the cellar well. But, instead of continuing on her intended path, halfway across the yard she changed her direction and walked straight toward the window in the darkness. This brought her to the cellar well and her fall.

These features of the case are clear: Mrs. Tissue knew the cellar wells were there. She testified that she knew of the one at the rear of her own apartment and that she knew there were steps at the rear of the other apartment, and she was familiar with the back yard. Had she pursued the normal path between the two rear porches, she would not have come to the cellar well. The cellar well was not concealed; it was not new or temporary; it had been there the entire five years of the Tissues' tenancy. The basement room to which the cellar well led was not a utility room for the use of the tenants (except for the occasional, very limited use of the spigot in the daytime). A cellar well leading to a basement in an apartment building is not an unusual or unexpected condition; in fact it is a well-nigh universal condition. There was nothing defective about the cellar well. Mrs. Tissue was not going down into the basement room for some purpose connected with her tenancy; she was crossing the back yard to go to the next apartment. The existence of the cellar well was obvious to any tenant who was familiar with the back yard.

 We think it is clear from the foregoing facts that Mrs. Tissue's fall into the cellar well was not due to any negligence on the part of the landlord. It is unnecessary that we venture into the refinements of the law of torts. We start with the general principle that the landlord must use reasonable care under all the circumstances. Harper and James have a long discussion of the legal principles applicable in this area of the

law.[1] The thrust of that discussion is that a landlord is not liable for injuries suffered as the result of the condition of a premises, if the condition is not unreasonably dangerous to those with knowledge of it. This cellar well was not unreasonably dangerous to Mrs. Tissue.

The judgment of the District Court is

Affirmed.

WASHINGTON, Circuit Judge, dissents.

I. 2 Harper and James, Torts §§ 27.13–27.17 (1956).